UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
GREEN CHARTERING AS,                :
d/b/a GREEN REEFERS,                :
              Plaintiff,   :
                                    :
v.                                  :   CIVIL ACTION
                                    :   NO. 04-10450 DPW
                                    :   **IN ADMIRALTY**
STEPHANSEN SEAFOODS AS.             :
              Defendant.   :
------------------------------------------------------------x
                                    :
MARITIME TERMINAL, INC.,            :
              Garnishee.   :
------------------------------------------------------------x

## SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR DEFAULT JUDGMENT

TO THE CLERK OF THE ABOVE-NAMED COURT:

Norman A. Peloquin, II certifies under penalty of perjury pursuant to 28 USC §1746 as follows:

1. I am Norman A. Peloquin, II, attorney for plaintiff, Green Chartering d/b/a Green Reefers (hereinafter "Green Reefers").

2. I am a member of the bar of the Commonwealth of Massachusetts and this Honorable Court.

3. I have read the Application for Default Judgment herein and know the contents thereof, and the same are true to the best of my knowledge, information and belief. The source of my knowledge, and the basis for my beliefs, is the information contained in the business records of plaintiff.

4. In further support of plaintiff's Application for Default Judgment, I am submitting a copy of plaintiff's terms and conditions to its liner sea waybill, attached hereto and marked as "**Appendix A**."

5. For ease of reference, I am also attaching a sample copy of BIMCO's Liner Sea Waybill as "**Appendix B**." Plaintiff's terms and conditions are identical to BIMCO's form.

6. Paragraph 21 of the said waybill provides that plaintiff has "... a lien on the goods for any amount due under th[e] Contract and for the costs of recovering the same, and may enforce such lien in any reasonable manner, including sale or disposal of the goods."

7. As previously stated in the undersigned's Affidavit in Support of Application for Default Judgment, dated October 27, 2004, plaintiff has incurred legal fees and expenses of $5,963.37 (through October 27, 2004) in connection with the enforcement of its lien through the prosecution of this action.

8. The reason that this affidavit is made by the undersigned counsel and not plaintiff is that plaintiff is a foreign corporation, no officer or director of which is now located within the District of Massachusetts.

I certify under the penalty of perjury that the foregoing is true and correct on this 6th day of December, 2004.

/s/ Norman A. Peloquin, II
Norman A. Peloquin II
(BBO Bar No. 550872)
NORMAN A. PELOQUIN, II, P.C.
Morad Building, 460 County Street
New Bedford, MA 02740-5107
Tel. (508) 991-2300
Fax (508) 991-8300

Attorney for
Green Chartering AS d/b/a Green Reefers

**Appendix A**

# FROM GREEN REEFERS
## Re: North Atlantic Service
## Norway to Bay Roberts, Shelburne and New Bedford

*Freight rates for frozen and salted fish on our Westbound Service will remain the same as for 2003, i.e.:*

*USD 160/tonn + baf for quantities above 100 tonns*
*USD 165/tonn + baf for quantities between 50/100 tonns*
*USD 170/tonn + baf for quantities between 10/50 tonns*
*USD 185/tonn + baf for quantities less than 10 tonns*

*For quantities below 6 pallets, the above rates will be invoiced per pallet.*
*For dried fish (stock fish) the above rates will apply per pallet.*

*Terms: Elevator in / Free out (for the vessel)*
*Weight: The rates is based on a pallet weight of* **min. 800 kilo per pallet**.
*For pallets with lower weights, rates upon request.*
*Baf: Bunkers adjustment factor will be set to 5 percent from January 1st and are subject to change depending the development of bunkers prices.*

*The rates includes feedering service from all main fishing ports Kirkenes/ Måløy range to Ålesund based on feedering on Green's feeder vessels.*

*A* **rebate** *from usd* **USD 20 per tonn on above rates**, *for all cargo located at, or delivered by the Customers for their own account to Kloosterboer, Ålesund for frozen fish or Gangstøvika for salted/dried/stockfish..*

*The discharge cost in New Bedford will remain at usd 17,50 per pallet.*
*On request, we will also arrange trucking in USA.*

*For bookings, please contact*

Green Chartering, Nesttun
Tel: 47-55362500
Fax: 47-55362501
Email: green.chartering@greenreefers.no

Best regards
Rune Tarberg/Nina Bjørndal
January 2nd, 2004

Case 1:04-cv-10450-DPW  Document 16  Filed 12/07/2004  Page 5 of 8

# LINER SEA WAYBILL
Code Name: "LINEWAYBILL"

## I. GENERAL PROVISIONS

**1. Definitions.**
"Carrier" means the party on whose behalf this Sea Waybill has been signed.
"Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee and the owner of the goods.

**2. Carrier's Tariff.**
The terms of the Carrier's applicable Tariff on the date of shipment are incorporated herein. Copies of the relevant provisions of the applicable Tariff are available from the Carrier upon request. In the case of inconsistency between this Sea Waybill and the applicable Tariff, this Sea Waybill shall prevail.

**3. Law and Jurisdiction.**
Disputes arising under this Sea Waybill shall be determined by the courts and in accordance with the law at the place where the Carrier has his principal place of business.

## II. PERFORMANCE OF THE CONTRACT

**4. Methods and Routes of Transportation.**
(a) As the Vessel is engaged in liner service the intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the service including maintenance of the Vessel and crew, and the Vessel may sail with or without pilots, undergo repairs, adjust equipment, drydock, be towed or tow vessels in all situations.
(b) Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, land and store the goods either on shore or afloat and reship and forward the same at the Carrier's expense but at the Merchant's risk.

**5. Stowage.**
(a) The Carrier shall have the right to stow goods by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant on or under deck without notice to the Merchant.

**6. Hindrances etc. Affecting Performance.**
(a) The Carrier shall use reasonable endeavours to complete the performance of this Contract.
(b) If at any time the performance of the Contract as evidenced by this Sea Waybill is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind, and if by virtue of sub-clause 6(a) the Carrier has no duty to complete the performance of the Contract, the Carrier (whether or not the transport is commenced) may elect to treat the performance of this Contract as terminated and place the goods at the Merchant's disposal at any place which the Carrier shall deem safe and convenient.
(c) If the Merchant has not taken delivery of the goods within the time designated by the Carrier, the Carrier shall be at liberty to put the goods in safe custody on behalf of the Merchant at the latter's risk and expense, and, if not taken delivery of, to sell the same privately or by auction after 14 days.
(d) In any event the Carrier shall be entitled to full freight for goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**7. Lighterage.**
Any customary local lightering in or off ports of loading or ports of discharge shall be for the account and risk of the Carrier.

**8. Loading, Discharging and Delivery.**
(a) Loading, discharging and delivery of the cargo shall be arranged by the Carrier's Agent unless otherwise agreed.
(b) All costs for storing and handling of the goods before loading and after discharging shall be for the Merchant's account.
(c) Loading and discharging may commence without previous notice.
(d) The Merchant or his Assigns shall tender the goods when the Vessel is ready to load and as fast as the vessel can receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the Vessel may leave the port without further notice and deadfreight is to be paid.
(e) The Merchant or his Assigns shall take delivery of the goods and continue to receive the goods as fast as the Vessel can deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge shall be deemed a true fulfilment of the Contract, or alternatively to act under Clause 6.
(f) The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.
(g) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**9. Optional Ports of Discharge.**
The port of discharge for optional cargo must be declared to the Vessel's Agents at the first of the optional ports not later than 48 hours before the Vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first of any other optional port and the contract of carriage shall then be considered as having been fulfilled. Any option can be exercised for the total quantity under this Sea Waybill only.

## III. CARRIER'S LIABILITY

**10. Liability for Carriage Between Port of Loading and Port of Discharge.**
The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or if no such enactment is in place, the Hague Rules as enacted in the country of destination, apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or while the cargo is in the charge of another carrier, or with respect to deck cargo and live animals.

**11. Liability for Pre- and On-Carriage.**
When engaging to receive the goods at a place other than the Vessel's Port of Loading or to deliver the goods at a place other than the Vessel's Port of Discharge, the Carrier acts as the Merchant's Agent only and shall be entitled to sub-contract the carriage on any terms. The Carrier shall not be liable for any loss or damage arising during any part of the transport other than that between the Port of Loading and Port of Discharge even though the freight for the whole transport has been collected by him.

**12. Amount of Compensation.**
(a) When the Carrier is liable for compensation in respect of loss of or damage to the goods, such compensation shall be calculated by reference to the value of such goods at the place and time they are delivered to the Merchant or should have been so delivered in accordance with the Contract.
(b) The value of the goods shall be fixed according to the commodity exchange price or, if there be no such price, according to the current market price or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.
(c) Higher compensation than provided for in Clause 10 may be claimed only when, with the consent of the Carrier, the value for the goods declared by the Shipper which exceeds the limits laid down in Clause 10 has been stated on the face of this Sea Waybill at the place indicated. In that case the amount of the declared value shall be substituted for that limit.

**13. Delay, Consequential Loss, etc.**
If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the goods, the liability of the Carrier shall be limited to the freight for the transport covered by this Sea Waybill, or to the limitation amount as determined in Clause 10, whichever is the lesser.

**14. Defences and Limits for the Carrier, Servants, etc.**
(a) The defences and limits of liability provided in this Sea Waybill shall apply in any action against the Carrier for loss of or damage to the goods whether the action be founded in contract or in tort.
(b) The Carrier shall not be entitled to the benefit of the limitation of liability provided for in this Sea Waybill, if it is proved that the loss or damage resulted from a personal act or omission of the Carrier done with intent to cause such loss or damage or recklessly and with knowledge that damage would probably result.
(c) The Carrier undertakes that no claim shall be made against any servant, agent or other persons whose services the Carrier has used in order to perform this Contract and if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) However, the provisions of this Sea Waybill apply whenever claims relating to the performance of this Contract are made against any servant, agent or other persons whose services the Carrier has used in order to perform this Contract, whether such claims are founded in contract or in tort. In entering into this Contract, the Carrier, to the extent of such provisions, does so not only on his own behalf but also as agent or trustee for such persons. The aggregate liability of the Carrier and such persons shall not exceed the limits in Clause 12 and, if applicable, Clause 24.

## IV. DESCRIPTION OF GOODS

**15. Carrier's Responsibility.**
In the absence of reservation by the Carrier, any statement in this Sea Waybill as to the quantity, order and/or condition of the goods shall be as between the Carrier and the Shipper be prima facie evidence of receipt of the goods as so stated.

**16. Shipper's Responsibility.**
The Shipper shall be deemed to have guaranteed to the Carrier the accuracy, at the time the goods were received for carriage, of the description of the goods, marks, numbers, quantity and weight, as furnished by him, and the Shipper shall defend, indemnify and hold harmless the Carrier against all loss, damage and expenses arising or resulting from inaccuracies in or inadequacy of such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility and liability under this Sea Waybill to any person other than the Shipper. The Shipper shall remain liable even if the goods have been delivered.

**17. Shipper-Packed Containers, etc.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Dangerous Goods.**
(a) The Merchant shall comply with all internationally recognised requirements and all rules which apply according to national law or by reason of International Convention, relating to the carriage of goods of a dangerous nature, and shall in any event inform the Carrier in writing of the exact nature of the danger before goods of a dangerous nature are taken into charge by the Carrier and indicate to him, if need be, the precautions to be taken.
(b) Goods of a dangerous nature which the Carrier did not know were dangerous, may, at any time or place, be unloaded, destroyed, or rendered harmless, without compensation; further, the Merchant shall be liable for all expenses, loss or damage arising out of the handing over of such goods or of their carriage.
(c) If any goods shipped with the knowledge of the Carrier as to their dangerous nature shall become a danger to any person or property, the goods may in like manner be landed at any place or destroyed or rendered innocuous by the Carrier without liability on the part of the Carrier except for General Average, if any.

**19. Return of Containers.**
(a) For the purpose of this Clause the Consignor shall mean the person who concludes this Contract with the Carrier and the Consignee shall mean the person entitled to receive the goods from the Carrier.
(b) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clear and within the time prescribed in the Carrier's tariff or elsewhere.
(c) (i) The Consignor shall be liable for any loss of, damage to, or delay, including demurrage, of such articles, incurred during the period between handing over to the Consignor and return to the Carrier for carriage.
(ii) The Consignor and the Consignee shall be jointly and severally liable for any loss of, damage to, or delay, including demurrage, of such articles, incurred during the period between handing over to the Consignee and return to the Carrier.

## V. FREIGHT AND LIEN

**20. Freight and Charges.**
(a) Freight shall be deemed earned when the goods have been received for carriage and shall be paid in any event. The Carrier's claim for any charges under this Contract shall be considered definitely payable in like manner as soon as the charges have been incurred. Interest at Libor plus 2 per cent. shall run from the date when freight and charges are due.
(b) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing on board and expenses incurred in repairing damage to and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons.
(c) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the Vessel shall be paid by the Merchant.
(d) The Merchant shall be liable for all fines and/or losses which the Carrier, the Vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.
(e) The Merchant's attention is drawn to the stipulations concerning currency in which the freight and charges are to be paid, rate of exchange, devaluation and other contingencies relative to freight and charges in the relevant tariff conditions. If no such stipulation as to devaluation exists or is applicable the following shall apply:
If the currency in which freight and charges are quoted is devalued between the date of the freight agreement and the date when the freight and charges are paid, then all freight and charges shall be automatically and immediately increased in proportion to the extent of the devaluation of the said currency.
(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts or verifying the freight basis, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the goods inspected and the weight, measurement or value verified.

**21. Lien.**
The Carrier shall have a lien on the goods for any amount due under this Contract and for the costs of recovering the same, and may enforce such lien in any reasonable manner, including sale or disposal of the goods.

## VI. MISCELLANEOUS PROVISIONS

**22. General Average.**
(a) General Average shall be adjusted at any port or place at the Carrier's option, and settled according to the York-Antwerp Rules 1994, or any modification thereof, the covering all goods, whether carried on or under deck. The New Jason Clause as approved by BIMCO shall be considered incorporated into this Sea Waybill.
(b) Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be submitted to the Carrier prior to delivery of the goods.

**23. Both-to-Blame Collision Clause.**
The Both-to-Blame Collision Clause as approved by BIMCO shall be considered incorporated into this Sea Waybill.

**24. U.S. Trade.**
(a) In case the Contract evidenced by this Sea Waybill is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in the said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.
(b) If the U.S. COGSA applies, and unless the nature and value of the goods have been declared by the Shipper before the goods have been handed over to the Carrier and inserted in this Sea Waybill, the Carrier shall in no event be or become liable for any loss of or damage to the goods in an amount exceeding USD 500 per package or customary freight unit.

**Appendix B**

Code Name: "LINEWAYBILL"

Shipper



**NON-NEGOTIABLE
LINER SEA WAYBILL**
Issued by The Baltic and International Maritime Council (BIMCO),
subject to the CMI Uniform Rules for Sea Waybills.

Consignee (not to order)

LWB. No.

Reference No.

Notify party/address

Pre-carriage by *   Place of receipt by pre-carrier *

Vessel   Port of loading

Port of discharge   Place of delivery by on-carrier *

| Container No./Seal No./Marks and Numbers | Number and kind of packages, description of goods | Gross weight, kg | Measurement, m³ |
|---|---|---|---|
| | | | |

Above particulars as declared by Shipper but not acknowledged by the Carrier

| Total No. of Containers/Packages or Units received by the Carrier | RECEIVED for carriage in apparent good order and condition (unless otherwise stated herein) the total number of Containers/Packages or Units indicated in the Box opposite entitled "Total No. of Containers/Packages or Units received by the Carrier" and the goods as specified above, weight, measure, marks, numbers, quality, quantity, contents and value unknown for delivery at the place indicated above.
The goods shipped under this Sea Waybill will be delivered to the Party named as Consignee or its authorised agent, on production of proof of identity without any documentary formalities. Should the Shipper require delivery of the goods to a party other than the Consignee stated in this Sea Waybill, then written instructions must be given to the Carrier or his agent. The Shipper shall, however, be entitled to transfer right of control of the goods to the Consignee, the exercise of such option to be noted on this Sea Waybill and to be made no later than the receipt of the goods by the Carrier. The Carrier shall exercise due care ensuring that delivery is made to the proper party. However, in case of incorrect delivery, the Carrier will accept no responsibility unless due to fault or neglect on his part. |
|---|---|
| Freight and charges | |
| Freight payable at | |
| Shipper's declared value of: | Place and date of issue |
| subject to payment of above extra charge.
**FOR CONDITIONS OF CARRIAGE SEE NEXT PAGE.**
Note:
The Merchant's attention is drawn to the fact that in accordance with Clauses 10 to 13 and Clause 24 of this Sea Waybill, the liability of the Carrier is limited in respect of loss of or damage to the goods and delay.
* Applicable only when document used as a Through Sea Waybill | Signed for
............................................................... as Carrier
by
...............................................................
As agent(s) only to the Carrier |

Copyright published by
The Baltic and International Maritime Council
(BIMCO), Copenhagen 1947

**Printed by the BIMCO Charter Party Editor**

# LINER SEA WAYBILL
Code Name: "LINEWAYBILL"

## I. GENERAL PROVISIONS

**1. Definitions.**
"Carrier" means the party on whose behalf this Sea Waybill has been signed.
"Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee and the owner of the goods.

**2. Carrier's Tariff.**
The terms of the Carrier's applicable Tariff on the date of shipment are incorporated herein. Copies of the relevant provisions of the applicable Tariff are available from the Carrier upon request. In the case of inconsistency between this Sea Waybill and the applicable Tariff, this Sea Waybill shall prevail.

**3. Law and Jurisdiction.**
Disputes arising under this Sea Waybill shall be determined by the courts and in accordance with the law at the place where the Carrier has his principal place of business.

## II. PERFORMANCE OF THE CONTRACT

**4. Methods and Routes of Transportation.**
(a) As the Vessel is engaged in liner service the intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the service including maintenance of the Vessel and crew, and the Vessel may sail with or without pilots, undergo repairs, adjust equipment, drydock, be towed or low vessels in all situations.
(b) Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, land and store the goods either on shore or afloat and reship and forward the same at the Carrier's expense but at the Merchant's risk.

**5. Stowage.**
(a) The Carrier shall have the right to stow goods by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant on or under deck without notice to the Merchant.

**6. Hindrances etc. Affecting Performance.**
(a) The Carrier shall use reasonable endeavours to complete the performance of this Contract.
(b) If at any time the performance of the Contract as evidenced by this Sea Waybill is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind, and if by virtue of sub-clause 6(a) the Carrier has no duty to complete the performance of the Contract, the Carrier (whether or not the transport is commenced) may elect to treat the performance of this Contract as terminated and place the goods at the Merchant's disposal at any place which the Carrier shall deem safe and convenient.
(c) If the Merchant has not taken delivery of the goods within the time designated by the Carrier, the Carrier shall be at liberty to put the goods in safe custody on behalf of the Merchant at the latter's risk and expense, and, if not taken delivery of, to sell the same privately or by auction after 14 days.
(d) In any event the Carrier shall be entitled to full freight for goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**7. Lighterage.**
Any customary, local lightering in or off ports of loading or ports of discharge shall be for the account and risk of the Carrier.

**8. Loading, Discharging and Delivery.**
(a) Loading, discharging and delivery of the cargo shall be arranged by the Carrier's Agent unless otherwise agreed.
(b) All costs for storing and handling of the goods before loading and after discharge shall be for the Merchant's account.
(c) Loading and discharging may commence without previous notice.
(d) The Merchant or his Assigns shall tender the goods when the Vessel is ready to load and as fast as the Vessel can receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the Vessel may leave the port without further notice and deadfreight is to be paid.
(e) The Merchant or his Assigns shall take delivery of the goods and continue to receive the goods as fast as the Vessel can deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge shall be deemed a true fulfilment of the Contract, or alternatively to act under Clause 6.
(f) The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.
(g) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**9. Optional Ports of Discharge.**
The port of discharge for optional cargo must be declared to the Vessel's Agents at the first of the optional ports not later than 48 hours before the Vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall then be considered as having been fulfilled. Any option can be exercised for the total quantity under this Sea Waybill only.

## III. CARRIER'S LIABILITY

**10. Liability for Carriage Between Port of Loading and Port of Discharge.**
The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or while the cargo is in the charge of another carrier, or with respect to deck cargo and live animals.

**11. Liability for Pre- and On-Carriage.**
When engaging to receive the goods at a place other than the Vessel's Port of Loading or to deliver the goods at a place other than the Vessel's Port of Discharge, the Carrier acts as the Merchant's Agent only and shall be entitled to sub-contract the carriage on any terms. The Carrier shall not be liable for any loss or damage arising during any part of the transport other than that between the Port of Loading and Port of Discharge even though the freight for the whole transport has been collected by him.

**12. Amount of Compensation.**
(a) When the Carrier is liable for compensation in respect of loss of or damage to the goods, such compensation shall be calculated by reference to the value of such goods at the place and time they are delivered in accordance with the Contract or should have been so delivered in accordance with the Contract.
(b) The value of the goods shall be fixed according to the commodity exchange price or, if there be no such price, according to the current market price or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.
(c) Higher compensation than provided for in Clause 10 may be claimed only when, with the consent of the Carrier, the value for the goods declared by the Shipper which exceeds the limits laid down in Clause 10 has been stated on the face of this Sea Waybill at the place indicated. In that case the amount of the declared value shall be substituted for that limit.

**13. Delay, Consequential Loss, etc.**
If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the goods, the liability of the Carrier shall be limited to the freight for the transport covered by this Sea Waybill, or to the limitation amount as determined in Clause 10, whichever is the lesser.

**14. Defences and Limits for the Carrier, Servants, etc.**
(a) The defences and limits of liability provided in this Sea Waybill shall apply in any action against the Carrier for loss of or damage to the goods whether the action can be founded in contract or in tort.
(b) The Carrier shall not be entitled to the benefit of the limitation of liability provided for in this Sea Waybill, if it is proved that the loss or damage resulted from a personal act or omission of the Carrier done with intent to cause such loss or damage or recklessly and with knowledge that damage would probably result.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or other persons whose services the Carrier has used in order to perform this Contract and if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) However, the provisions of this Sea Waybill apply whenever claims relating to the performance of this Contract are made against any servant, agent or other persons whose services the Carrier has used in order to perform this Contract, whether such claims are founded in contract or in tort. In entering into this Contract, the Carrier, to the extent of such provisions, does so not only on his own behalf but also as agent or trustee for such persons. The aggregate liability of the Carrier and such persons shall not exceed the limits in Clause 12 and, if applicable, Clause 24.

## IV. DESCRIPTION OF GOODS

**15. Carrier's Responsibility.**
In the absence of reservation by the Carrier, any statement in this Sea Waybill as to the quantity, order and/or condition of the goods shall as between the Carrier and the Shipper be prima facie evidence of receipt of the goods as so stated.

**16. Shipper's Responsibility.**
The Shipper shall be deemed to have guaranteed to the Carrier the accuracy, at the time the goods were received for carriage, of the description of the goods, marks, numbers, quantity and weight, as furnished by him, and the Shipper shall defend, indemnify and hold harmless the Carrier against all loss, damage and expenses arising or resulting from inaccuracies in or inadequacy of such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility and liability under this Sea Waybill to any person other than the Shipper. The Shipper shall remain liable even if the goods have been delivered.

**17. Shipper-Packed Containers, etc.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container;
or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Dangerous Goods.**
(a) The Merchant shall comply with all internationally recognised requirements and all rules which apply according to national law or by reason of international Convention, relating to the carriage of goods of a dangerous nature, and shall in any event inform the Carrier in writing of the exact nature of the danger before goods of a dangerous nature are taken into charge by the Carrier and indicate to him, if need be, the precautions to be taken.
(b) Goods of a dangerous nature which the Carrier did not know were dangerous, may, at any time or place, be unloaded, destroyed, or rendered harmless, without compensation; further, the Merchant shall be liable for all expenses, loss or damage arising out of the handing over of such goods or of their carriage.
(c) If any goods shipped with the knowledge of the Carrier as to their dangerous nature shall become a danger to any person or property, the goods may in like manner be landed at any place or destroyed or rendered innocuous by the Carrier without liability on the part of the Carrier except for General Average, if any.

**19. Return of Containers.**
(a) For the purpose of this Clause the Consignor shall mean the person who concludes this Contract with the Carrier and the Consignee shall mean the person entitled to receive the goods from the Carrier.
(b) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(c) (i) The Consignor shall be liable for any loss of, damage to, or delay, including demurrage, of such articles, incurred during the period between handing over to the Consignor and return to the Carrier for carriage.
(ii) The Consignor and the Consignee shall be jointly and severally liable for any loss of, damage to, or delay, including demurrage, of such articles, incurred during the period between handing over to the Consignee and return to the Carrier.

## V. FREIGHT AND LIEN

**20. Freight and Charges.**
(a) Freight shall be deemed earned when the goods have been received for carriage and shall be paid in any event. The Carrier's claim for any charges under this Contract shall be considered definitely payable in like manner as soon as the charges have been incurred. Interest at Libor plus 2 per cent, shall run from the date when freight and charges are due.
(b) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing on board and expenses incurred in repairing damage to and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons.
(c) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the Vessel shall be paid by the Merchant.
(d) The Merchant shall be liable for all fines and/or losses which the Carrier, the Vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.
(e) The Merchant's attention is drawn to the stipulations concerning currency in which the freight and charges are to be paid, rate of exchange, devaluation and other contingencies relative to freight and charges in the relevant tariff conditions. If no such stipulation as to devaluation exists or is applicable the following shall apply:
If the currency in which freight and charges are quoted is devalued between the date of the freight agreement and the date when the freight and charges are paid, then all freight and charges shall be automatically and immediately increased in proportion to the extent of the devaluation of the said currency.
(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts or verifying the freight basis, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the goods inspected and the weight, measurement or value verified.

**21. Lien.**
The Carrier shall have a lien on the goods for any amount due under this Contract and for the costs of recovering the same, and may enforce such lien in any reasonable manner, including sale or disposal of the goods.

## VI. MISCELLANEOUS PROVISIONS

**22. General Average.**
(a) General Average shall be adjusted at any port or place at the Carrier's option, and settled according to the York-Antwerp Rules 1994, or any modification thereof, this covering all goods, whether carried on or under deck. The New Jason Clause as approved by BIMCO shall be considered incorporated into this Sea Waybill.
(b) Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be submitted to the Carrier prior to delivery of the goods.

**23. Both-to-Blame Collision Clause.**
The Both-to-Blame Collision Clause as approved by BIMCO shall be considered incorporated into this Sea Waybill.

**24. U.S. Trade.**
(a) In case the Contract evidenced by this Sea Waybill is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in the said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.
(b) If the U.S. COGSA applies, and unless the nature and value of the goods have been declared by the Shipper before the goods have been handed over to the Carrier and inserted in this Sea Waybill, the Carrier shall in no event be or become liable for any loss of or damage to the goods in an amount exceeding USD 500 per package or customary freight unit.

This document is a computer generated form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.